Submitted on briefs April 6, reversed and remanded April 17, rehearing denied May 15, 1917.

# HINDERLITER *v.* McDONALD.

(164 Pac. 378.)

**Money Lent—Admissibility of Evidence.**

1. It is competent to establish by parol testimony that money was borrowed, irrespective of the purpose to which it was to be applied.

[As to parol evidence of the circumstances of a transaction and the conduct of the parties, see note in 11 Am. St. Rep. 894.]

**Money Lent—Pleading—Construction.**

2. Under a complaint that plaintiff advanced money for defendant to pay his share of a mining claim they had agreed to purchase, the allegation regarding the agreement to purchase the mining claim is material and must be proved by competent evidence, since the advance of money was merely incidental for that purpose.

**Frauds, Statute of—Mining Claim.**

3. Section 5132, L. O. L., making mining claims real estate, Section 5134, making mining claims conveyances, subject to provisions governing other realty, and Sections 804, 808, requiring conveyances, etc., of real estate to be in writing, prevent oral proof of an agreement to purchase a mining claim interest.

**Money Lent—Sufficiency of Evidence.**

4. Plaintiff cannot recover for money advanced for defendant to pay his share of a mining claim interest they had agreed to purchase and own together, where plaintiff took the title to the entire interest in his own name.

From Josephine: FRANK M. CALKINS, Judge.

This is an action by W. A. Hinderliter against W. L. McDonald in which plaintiff was the prevailing party and defendant appealed.   Reversed, remanded and rehearing denied.

In Banc.   Statement by MR. JUSTICE BURNETT.

The complaint in this action contains the following averment:

"That on or about the 28th day of February, 1914, in the City of Grants Pass, Oregon, the plaintiff and defendant entered into an agreement to purchase for the sum of $400.00 the 1/6 interest of one B. F. Fry in a certain group of mining claims known as the 'Afterthought Mine' located in Jackson County, Oregon, and under and by virtue of said agreement the plaintiff and defendant were to share equally in said interest and each was to pay one half of the said purchase price of Four hundred ($400.00) dollars: That at the time of said purchase the defendant requested the plaintiff to advance, to the said B. F. Fry for his 1/6 interest in said mine, one half of the purchase price, to wit, $200.00 as a loan from the plaintiff to the defendant which the defendant promised and agreed to repay to the said plaintiff within a day or so after the date of the said advancement and thereupon and in consideration of the promise to repay as aforesaid to the plaintiff as aforesaid this plaintiff and defendant did purchase said interest of Fry and this plaintiff did advance for the defendant the sum of $200.00 upon the said purchase price on the 2nd day of March, 1914."

The remainder of the pleading is to the effect that the defendant agreed to repay the plaintiff the sum of $200 within a day or so after the latter had paid it to Fry, but has not done so.   The answer is a denial of all the allegations of the complaint except the nonpayment of the money demanded.   At the close of the

plaintiff's case the defendant moved for a judgment of nonsuit on the ground:

"That the testimony shows that the agreement, if any existed, or whatever agreement there was between the plaintiff and the defendant was verbal, not in writing, not subscribed to by the party to be charged and was an assumption on the part of the defendant to pay the debt of another, and that the same is clearly within the statute of frauds."

The trial court overruled this motion. The jury returned a verdict for the plaintiff in the sum of $200, and interest. From the ensuing judgment the defendant appealed.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED AND REMANDED.
REHEARING DENIED.

For appellant there was a brief over the name of *Mr. A. C. Hough.*

For respondent there was a brief over the name of *Mr. C. A. Sidler.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1–3. The contention of the plaintiff is that, reduced to its lowest terms, the complaint is for the recovery of money loaned to the defendant. It is indeed competent to establish by parol testimony that money was borrowed no matter for what purpose it was to be applied; but that is not all the complaint the excerpt from which has been quoted. We find in the. first place it states that the parties to this action entered into an agreement to purchase the. interest of Fry in

certain mining claims. This is a material allegation to be proved by what the statute requires as competent testimony. Section 5132, L. O. L., says:

"All mining claims, whether quartz or placer, shall be real estate, and the owner of the possessory right thereto shall have a legal estate therein within the meaning of section 325."

This last reference is to the procedure for the recovery of real estate by what is commonly known as an action of ejectment. Section 5134, as it stood at the time of the transaction in question, declares:

"All conveyances of mining claims, or of interests therein, either quartz or placer, shall be subject to the provisions governing transfers and mortgages of other realty. * * "

Further, Section 804, is here set down:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

Again in Section 808 we find this:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * " 6. An agreement for the leasing, for a longer period than one year, or for the sale of real property, or of any interest therein. * * "

By the pleading, the advance of the money was a mere incident of an executory contract for the purchase of real property and was one of the things to be done by the plaintiff. The agreement, as stated in the complaint, contemplated that the result of the transaction when performed was to confer an estate in land upon the defendant. No writing whatever was produced showing a contract by these parties to purchase or by Fry to sell the latter's interest in the mines. Neither was there any instrument tending to show that any estate in the property was conveyed to the defendant. In point of law he has nothing to show that he has any title to or interest in the realty mentioned. Within the meaning of the extracts from the statutes, there was no competent proof that the defendant agreed to buy or that he participated in the purchase of the property. Yet all this is alleged as the basis of plaintiff's demand.

Passing this, however, we find from the record that six persons of whom the parties to this action were two and Fry a third, had possession of a mine under a written contract to purchase the same, having paid a portion of the price. The plaintiff here had advanced to Fry his part of the initial payment and had taken his note on that account for $500. After a time, Fry became dissatisfied and wished to retire from the venture. According to the plaintiff, in his oral testimony, McDonald urged him to give up to Fry his note and take over that interest. The last that was said between McDonald and plaintiff before surrendering the note was this, quoting from the latter's testimony narrated in the bill of exceptions:

"And he said, 'Go see Fry to-morrow and let him out and I will assume one half interest so we won't lose this money, otherwise you will have to lose it.' I

says, 'Just as you say, if you say you will assume it I will go and get it,' and he says, 'Yes, go on.' I says, 'Well, Bill, if that is what you mean, I will go at it, and let's settle it.' "

The plaintiff's further declaration as a witness is that he went to see Fry, surrendered the note, and took from him the following writing:

"Grants Pass, Ore., March 2nd, 1914.
"To whom it may concern:
"This is to certify that B. F. Fry, the undersigned, has by these presents sold to W. A. Hinderliter for the sum of Four hundred Dollars in hand paid sell and convey all of my one sixth (1/6) Interest in the Afterthought Group of Mining claims, situated in Jackson Co., State of Oregon, the said W. A. Hinderliter also releases the said B. F. Fry from all obligations that may have accrued against said Afterthought mining claims to date.
"Dated this 2nd day of March, 1914.
"Witness—F. G. ROPER.          Seal   B. F. FRY."

He also expressly says that he never gave the defendant any writing showing that the latter had any interest in the property and that he never even showed him the assignment which he took from Fry. It is plain that no money ever passed between the parties. The statute of frauds and that relating to the creation of an interest in real property are not satisfied by oral testimony as applied to the allegations of the complaint about contracting to buy the property and the subsequent actual purchase of the Fry interest.

4. Moreover, on the merits, the plaintiff shows that he did not perform the agreement which he alleges, namely, that in which both parties should join in the purchase of the claims. On the contrary, the writing which he took from Fry without reference to its legal

competency shows that whatever passed was to the plaintiff individually.   To affirm the judgment would be to require the defendant to pay for something which he never received but which the plaintiff took entirely to himself.   The judgment is reversed and the cause remanded to the Circuit Court, with directions to enter a judgment of nonsuit in favor of the defendant.                                      REVERSED AND REMANDED.

REHEARING DENIED.

---

Motion to dismiss appeal denied February 23, 1916.
Argued on the merits March 7, reversed and remanded March 20, 1917, rehearing denied May 22, 1917.